**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **RELAX INN DILLEY, LLC d/b/a** | § | |
| **RELAX INN,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **Civil Action No. 5:24-cv-800** |
| | § | |
| **KINSALE INSURANCE COMPANY,** | § | |
| | § | |
| *Defendant.* | § | |

**PLAINTIFF'S FIRST AMENDED COMPLAINT**

COMES NOW Plaintiff RELAX INN DILLEY, LLC d/b/a RELAX INN (hereinafter, referred to as the "Plaintiff), pursuant to Local Rule CV-15(a) and Federal Rule of Civil Procedure 15(a)(1) and files this, its First Amended Complaint against Defendant, KINSALE INSURANCE COMPANY ("Defendant"), in response to Defendant's Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim Upon which Relief can be Granted and, in support of its causes of action, would respectfully show the Court the following:

**I.     PARTIES**

1.   Plaintiff, RELAX INN DILLEY, LLC D/B/A RELAX INN, owns the property made the basis of this suit located at: 1062 FM 117, Dilley Texas 78017 (the "Property").

2.   Defendant, KINSALE INSURANCE COMPANY ("Kinsale" or "Defendant") is a foreign entity authorized to engage in the insurance business in the State of Texas and was duly served and has made an appearance herein. Defendant removed this case to this Court.

## II.    JURISDICTION AND VENUE

3.    This Honorable Court has personal jurisdiction over Defendant because at all times relevant hereto it provided insurance coverage in the State of Texas and Plaintiff's causes of action arise out of its in-state business activities.

4.    At the time this lawsuit was filed and to this day, Plaintiff's member resides in Frio County, Texas. Plaintiff is therefore a citizen of Texas for diversity jurisdiction purposes. Defendant has alleged that it is a citizen of the State of Arkansas and the Commonwealth of Virginia for diversity jurisdiction purposes. Plaintiff has no knowledge of the accuracy of this statement. Defendant has been duly served and appeared and answered in this Court.

5.    Venue is proper in the Western District of Texas, because the property at issue is located in this district, the loss occurred in this district, the claims asserted herein arose from one or more acts and/or omissions that occurred in this district, and Defendant has appeared and filed its Answer with this Court. More specifically, the property is located in the San Antonio Division of the Western District of Texas.

## III.    FACTUAL BACKGROUND

6.    Plaintiff entered into an agreement with Defendant to pay Defendant premiums in exchange for insurance coverage protecting Plaintiff's Property from damage or loss caused by or resulting from any "Covered Cause of Loss."

7.    The agreement was drafted by Defendant and assigned Policy Number 01001975550 (the "Policy"). The Policy's effective date was from 07/01/2022 – 07/01/2023 (referred to as the "Policy Period").

8. Coverage under the Policy covers "direct physical loss of or damage to Covered Property" caused by or resulting from any Covered Cause of Loss – which, under the policy, includes loss or damage to the Property caused by hail, wind, and/or rainstorms.

9. During the Policy Period a strong hail, wind, and rainstorm (hereinafter also referred to as "the storm event") hit the Property causing severe hail damage to the Property (exterior and interior).

10. Upon realizing the damage to the Property caused by the hailstone strikes (from hailstones up to 2-inches in diameter) and strong winds Plaintiff subsequently filed a claim under the Policy on or around March 30, 2023.

11. It was not until April 24, 2023, that Defendant, via its agent, Eric Ellerbe (claims examiner), sent Plaintiff a letter formally acknowledging the claim, which was assigned as claim number 36064 (hereinafter, referred to as, "Claim 1").

**A.    Investigations, Reports, and Denial**

12. In the April 24, 2023, letter sent to Plaintiff acknowledging Claim 1, Mr. Ellerbe stated that Defendant would continue to investigate the matter – yet, nearly a month following the date Defendant received the notice of Claim 1, according to information and belief, no investigation had been commenced to "continue."

13. Finally, on May 2, 2023 (over a month since Plaintiff reported the claim), McLarens – a biased claims management and loss adjusting company which Defendant regularly utilizes to adjust insurance claims and whom Defendant retained for Plaintiff's Claim, hired and sent out an engineer, Erik Valle, from the engineering company, Rimkus, to visit the Property.

14.     Again, upon information and belief, this May 2, 2023, visit was the first time that Defendant, or a representative of Defendant, went to the Property to assess the damage caused by the March 2023 storm event.[1]

15.     Notably, Plaintiff never received the engineer's report from Rimkus, and to this day, has no idea what Mr. Valle's findings and conclusions were.

16.     However, in a report authored and produced by Mr. Valle on August 14, 2023 in relation to another claim for wind damage to the Property, he states he was hired by McLarens/Defendant to determine if the Property's metal roof covering exhibited functional damage from hail and that he merely conducted a ***visual inspection*** of the Property and the damage thereto.

17.      An adequate inspection for functional hail damage to the metal roof at the Property would require additional testing, nondestructive and/or destructive, to adequately determine the true extent of damage which Defendant failed to do.

18.     Therefore, the fact that Mr. Valle merely performed a "visual inspection" clearly evidences that Defendant hired and sent unqualified personnel to Plaintiff's Property which resulted in an improper and inadequate inspection for covered damages.

19.     Further, as evidenced in the photos below showing the hail damage to the Property, even a visual inspection would lead anyone with knowledge about metal roofs and hail damage to realize that more testing would have to be completed to make the proper determination regarding the extent of the damage:

---

[1] Also important to note, from the time Plaintiff reported the claim to Defendant, Defendant never requested from Plaintiff any items, statements, forms, or the like that Defendant should have reasonably believed would be required to properly handle and adjust the Claim.  Furthermore, Defendant never provided the necessary forms and instructions as required under the Texas Insurance Code and the Policy.



20.     However, Plaintiff has still not received Mr. Valle's full report, and, as such, Defendant has failed to provide Plaintiff with its full conclusions for Claim 1.

21.     Regardless, Defendant failed to promptly inform Plaintiff whether the Claim was denied or accepted, as required under the Chapter 542 of the Texas Insurance Code.

22.     Nonetheless, given 1) the historical weather data (indicating a storm event with large hail struck the Property around early March 2023) and 2) the physical evidence on the Property (including but not limited to surface splatter and discoloration to all the roofs' metal panels, indentations on the light gauge metal roof panels, and dents to AC unit foils), it is undeniable that hail strikes occurred at the Property.

23.     Because Defendant's failure to promptly and properly adjust the claim (*e.g.*, sending out qualified personnel to complete an <u>adequate</u> inspection), Plaintiff, to this day, has not received any payment for Claim 1.

24.     On May 15, 2023, shortly after Mr. Valle's visit to the Property to inspect the damage from the hail / storm event in relation to Claim 1, several storms formed in and around Plaintiff's Property.  One of the storms produced a tornado and damaging wind gusts of at least 75 mph directly at Plaintiff's Property.

25.     As illustrated below, Plaintiff's Property was severely damaged:





26.     As seen above, the tenacious tornadic winds tore many portions of the Property's roof away, substantially damaging other parts of the roof to the point of being nonrepairable, in addition to the other extensive damage to the exterior of the Property from the strong wind and wind-blown debris.

27.     Furthermore, to add insult to injury, soon after the storm passed, rain fell and entered new storm created openings, causing extensive interior water damage by allowing water to intrude through the blown open and compromised roof.

28.     Needless to say, the May 15, 2023, storm left the Property extremely damaged, leaving Plaintiff's motel uninhabitable and wholly inoperable.

29.    Already dealing with Defendant in relation to the damages to the Property from Claim 1, Plaintiff was unsure what to do in regard to the additional damage from the May 2023 storm event (*i.e.*, whether to make a whole new claim or not).  As such, Plaintiff's representative emailed the following to the Mr. Ellerbe the morning following asking Defendant/Ellerbe for assistance and advice:

> Good morning Mr. Ellerbe, there was a storm last night 5-15-23 in Dilley Tx and we wanted to know if you would want to add the additional damages to our current claim or we should open a new claim… Please call me at your earliest convenience.

30.    The next day, Mr. Ellerbe started a new claim under the Policy for the May 15, 2023, storm event – assigned as claim number 37094 (hereinafter, "Claim 2," and collectively both Claim 1 and Claim 2 will be referred to as "the Claims").

31.    Defendant informed/advised Plaintiff that, in order to get Plaintiff's Property repaired for all the damage from both storm events, it would be easier and less complicated if Plaintiff closed Claim 1 (the hail claim) and proceed solely with Claim 2.

32.    Trusting Defendant's recommendation and advice, Plaintiff sent Mr. Ellerbe an email on May 26, 2023, closing Claim 1, with the notion that Defendant would do the "right" thing and properly adjust and pay out for the damages relating to Claim 2, which, in effect, would have concurrently paid for the damages from Claim 1.[2]

33.    Defendant improperly advised Plaintiff to close Claim 1 despite no reason to deny the existence of covered damage, and later improperly denied a large part of the damage to the covered Property under Claim 2.

34.    Despite the fact that Plaintiff's Property was in total shambles following the storms events, and despite Plaintiff's continual pleas to Defendant to hurry things (note, Plaintiff provided

---

[2] Claim 1 was reopened in 2024 and, along with Claim 2, is the subject matter of this lawsuit.

Defendant with the estimated cost of the repairs in early June 2023), it was not until July 7, 2023 -- nearly *two months* following Plaintiff initiating Claim 2 -- that Defendant (via Mr. Ellerbe and/or Mr. Nick Alvarez from McLarens) contacted MKA International, Inc. (an adjusting company) to send an estimator out, Charles Jendrusch, to inspect the damage to the Property from Claim 2.

35.     Defendant also rehired Mr. Valle from Rimkus, the same biased engineer Defendant used on Claim 1 to accompany Defendant on the inspection to prepare a report.

36.     Yet, it was not until July 27, 2023, that they – Mr. Valle and Mr. Jendrusch – actually went to the Property for the initial inspection.  At this time, it was well over two months since the date of loss / report of the loss to the Defendant.

37.     Unfortunately, not only was the first Property inspection for Claim 2 by the Defendant unreasonably delayed, but the inspection itself was also unreasonable and inadequate.

38.     During the inspection Defendant and its agents recorded severe and widespread damage throughout the entire Property. As Mr. Valle stated in the Rimkus report he authored, there were numerous detached and permanently deformed metal roof panels, missing and split framing members on the roofing system, ruptures along the entire roofing system of the Property, in addition to extensive interior water damage.

39.     However, despite all the carnage and extensive damage to the Property that Mr. Valle recorded and noted in the report, he concluded that the vast majority of Plaintiff's Property was not damaged by the tornado winds, or the storm event in general.  This is not only obviously contradictory to the scene he described initially in his report, but his conclusions and his opinions are also conclusory without any supporting evidence to support the damage being caused by something other than the reported storms event.

40.    For purposes of the Rimkus report, Mr. Valle broke up the Property into three (3) different roof sections (the left section, as depicted in the photo below, the long straight section, and the right section).    As stated in the Rimkus report, all three sections of the Property's roof show/showed signs of wind and hail damage in the form of numerous detached roof panels, missing and split members of the roofing systems, and ruptures all over the entire roof.



41.    As aforementioned, the Rimkus report noted extensive damage to the entire roofing system at the Property in addition to the interior water damage.

42.    It was clearly obvious the entire roofing system was [and still is] damaged by the high winds [and hail] sustained by the tornado/storm events.

43.    This fact is evidenced (as acknowledged in the Rimkus report) by the numerous detached and permanently deformed metal roof panels, hail strikes, missing and split framing members on the roofing system, ruptures along the entire roofing system of the Property.

44.    However, in an attempt to minimize the scope of damage at the Property and/or coverage, Mr. Valle concluded that only a small portion of the roof that was blown off was caused by the

May 2023 tornado winds and all that all other damage he noted to the Property's roof was not caused by the wind.

45.     Instead, Mr. Valle conveniently opined all the other damage to the Property's roof, including the lifted panels, were caused by non-covered perils such as: "wear and tear, deterioration, long-term moisture-related intrusion through missing fasteners or missing fastener washers, installation deficiencies, foot traffic, and expansion and contraction of the roofing relative to its framing over the years." (Taken, verbatim, from the Rimkus report, as the causes of the damage to the majority of the roof.).

46.     Further, aside from the roof, the majority of interior water damage to the motel rooms was also improperly denied by Defendant on the same grounds stated above for the portions of the roof that were lifted by the serve wind, hail, and rainstorm that hit the Property, but not completely detached.

47.     And this is despite the fact that the contradictory and arbitrary analysis in the Rimkus report (and attached photos) noted lifted roof panel and ruptures along the entire roofing system that is now allowing water to intrude into the interior.

48.     To make matters worse, the two sections (as delineated by Mr. Valle) of the Property's roof that Defendant denied coverage for under Claim 2, are not only wind damaged, but also still badly damaged by the hailstone strikes from Claim 1.

49.     Unfortunately, at the time of Mr. Valle's visit, Claim 1 was closed on the recommendation of Defendant to "make things easier" and thus those sections were not properly evaluated for hail by Defendant or its agents.

50.     Based on information and belief, this was an improper attempt to limit Defendant's liability on both Claims, misrepresented the rights of Plaintiff pursuant to the Policy to be owed for covered

damages from any covered loss, and Plaintiff relied on this misrepresentation to its detriment by closing a valid Claim for covered loss.

51.     Additionally, in an apparent attempt to muddy the waters as to when the obvious damage to the Property occurred, Mr. Valle made references storm events with strong winds from 2013 to the time of the report despite the extensive damage being fresh and obviously caused by a recent storm event.

52.     These references are clearly and completely irrelevant because Defendant underwrote and insured the Property after the storms events the report mentions.

53.     However, based on information and belief, Defendant failed to share its underwriting reports with its investigators and agents which would have tended to prove the damage to the Property occurred during the Policy Period and is covered.

54.     Further, in an overly obvious attempt to minimize the severity of the May 2023 storm event and where it made land fall, and despite clear evidence to the contrary, Mr. Valle stated in the report, "[o]ur review [of the May 15, 2023, storm] . . . indicated that the closest wind event, with reported wind gusts of 58 mph, was reported at the Hondo Municipal Airport, located 47.8 miles north of the subject building."   *This statement is blatantly false.*

55.     Per the National Oceanic and Atmospheric Administration's (NOAA) database, on May 15, 2023:

> A NWS Storm Survey found that an EF-0 tornado initially touched down on the west side of Dilley where damage to hardwood trees was noted. The tornado then moved in a northeasterly direction, causing damage to roofs of buildings on either side of I-35. The tornado lifted on the east side of the interstate and covered approximately 0.7 miles over a span of 2 minutes. Maximum winds were estimated at 75 mph.
>
> *See* Storm Events Database - Event Details | National Centers for Environmental Information (noaa.gov) at https://www.ncdc.noaa.gov/stormevents/eventdetails.jsp?id=1101665 (last visited July 30, 2024).

56.    Moreover, contrary to what the Rimkus report states (*e.g.*, the closest wind event from the May 2023 storm was "47.8 miles away" from Plaintiff's Property), *the tornado on May 15, 2023, directly hit Plaintiff's Property.*



57.    Above is a photo from the NOAA website (link provided above) in relation to the May 15, 2023, tornado/storm event.  As the photo clearly illustrates, Plaintiff's Property was in the direct eye of the storm (the Property is located in between the pinpoints on the photo):

58.    After Mr. Valle finished his report he produced it to the Defendant.

59.    Unsurprisingly, Defendant denied coverage on the other two roof sections alleging the causes of the damage was excluded due to one of the boilerplate exclusions adored by the insurance companies, as mentioned above. Defendant's denial is based on an arbitrary and contradictory report that makes unsupported conclusions.

60.    Further, Defendant reached its decision by ignoring material facts, such as that the entire Property was exposed to the same severe and damaging storm and sustained the same wind / hail.

61.    Defendant further improperly manipulated the claims process by misleading and misstating material facts leading Plaintiff to believe that its damage under Claim 1 would be covered by closing it and moving forward with Plaintiff's Claim 2 by itself.

62.    Defendant and its adjusters assigned to the Claim prepared a report that failed to include all of the damages sustained by the Property and undervalued the damages observed during the inspection.

63.    That is, Defendant and its adjusters' unreasonable investigation led to the denial of Plaintiff's claim.

64.    Moreover, Defendant and its adjusters performed an outcome-oriented investigation of Plaintiff's claim, which resulted in a biased, unfair and inequitable evaluation of Plaintiff's losses on the property.

### B.    Policy Compliance

65.    Plaintiff fully complied with all requirements under the Policy to properly notify the Defendant of all losses to its covered property

## IV.    CAUSES OF ACTION

### A.    Breach of Contract

66.    Plaintiff reasserts and realleges the allegations set forth in paragraphs 6 through 65 of this Complaint.

67.    Defendant entered into the Policy with Plaintiff.

68.    Plaintiff's Property sustained damage during the Policy Period as a result of wind, hail and rain which is a covered cause of loss under the Policy.

69.     Defendant has breached the terms of the Policy by wrongfully denying portions of the Claim while underpaying covered damages instead of paying the full benefits owed to Plaintiff under the Policy for a covered loss to the Property.

70.     As a result of Defendant's breach of the Policy, Plaintiff sustained: (1) actual damages, (2) consequential damages (related to increased costs of construction and other related consequential damages), and (3) incurred reasonable and necessary attorney's fees to date.

### B.     Insurance Code Violations

71.     Plaintiff reasserts and realleges the allegations set forth in paragraphs 6 through 70 of this Complaint.

#### *Prompt Payment of Claims Statute*

72.     During the Policy Period, Plaintiff's Property was damaged by covered causes of loss under the Policy.

73.     As a result, Plaintiff gave proper notice of their Claims under the Policy to Defendant.

74.     Defendant is under an obligation to promptly pay Plaintiff's Claims.

75.     Defendant has delayed payment of Plaintiff's Claims for a time exceeding the period specified by statute by underpaying damages covered under the Policy and wrongfully denying damages clearly covered under the Policy. Defendant has yet to pay the full amount owed on Plaintiff's second Claim and has not tendered any amount on Plaintiff's first Claim.

76.     Defendant failed to pay the full amounts on the Claims and delayed the payment on covered damages to the Property.

77.     To date, Defendant has not tendered payment for all of Plaintiff's damages arising out of the insurance Claims with Defendant despite having received all reasonably requested information by at least June 31, 2023.

78. The failure of Defendant to pay for the losses and/or to follow the statutory time guidelines for accepting or denying coverage constitutes a violation of Article 542.058 of the Texas Insurance Code.

79. As a result of the insurance code violations listed above, Plaintiff, in addition to Plaintiff's claim for damages, are entitled to statutory interest and attorney's fees as set forth in Article 542.060 of the Texas Insurance Code.

*541 Insurance Code Violations*

80. Defendant is required to comply with Chapter 541 of the Texas Insurance Code.

81. Defendant violated § 541.051 of the Texas Insurance Code by making statements misrepresenting the terms and/or benefits of the policy such as by stating that Claim 1 should be closed in order to make Claim 2 easier to cover. The Policy makes no such requirements for Plaintiff to waive covered damage in order for new damage from a covered to be covered or be easier to cover.

*Violation of § 541.060(a)(1):*

82. Defendant violated § 541.060(a)(1) by misrepresenting to Plaintiff a material fact or policy provision relating to coverage at issue by denying the Claim because the damage to the Property was not caused by a covered loss and that an exclusion prevented Plaintiff from getting paid for damages to the Property caused by a covered loss. Specifically, Defendant has misrepresented the following:

     a.   That the roofing system at the Property did not require full replacement as a result of the covered hail and wind damage sustained at the Property;

     b.   That closing Claim 1 for damage was proper and would help Defendant make a claim determination and payment on Claim 2

c.  That the costs for the extensive damage to the roof at the Property was not owed for because the damage was excluded despite the Policy covering damage to the Property for hail or wind; and

d.  That the interior damage at the Property was not caused by a covered loss because of an exclusion in the Policy.

*Violation of § 541.060(a)(2):*

83.  Defendant violated § 541.060(a)(2) by failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim with respect to which the insurer's liability had become reasonably clear that the covered damage caused substantial damage to Plaintiff's property.

84.  Defendant has failed to attempt in good faith to effectuate a prompt, fair and equitable settlement by:

a.  Making the misrepresentations listed at paragraph 74;

b.  Failing to properly investigate the damage to the exterior of the Property and the cause of such;

c.  Failing to record the obvious evidence of covered damage across the entire roof and roofing system;

d.  Failing to properly investigate the interior damage and the cause of such;

e.  Claiming that Claim 1 should be closed in order to properly handle Claim 2;

f.  Claiming interior water damage to other portions of the Property could not have been caused by the covered loss event without any proof to support that claim;

g.  Misrepresenting to Plaintiff the date of loss by wrongfully claiming prior weather events was the cause of the loss despite evidence to the contrary; and

h.  Hiring an engineer in an effort to solely deny Plaintiff's Claim, despite clear evidence of covered damage to the contrary.

85.     Each of these acts and omissions, singularly or in conjunction with others, constituted a violation of Texas Insurance Code § 541.060(a)(2), which proximately caused Plaintiff's damages.

*Violation of 541.060(a)(3)*

86.     Plaintiff reasserts and realleges the allegations set forth in paragraphs 6 through 85 of this Complaint.

87.     Defendant has failed to promptly provide Plaintiff a reasonable explanation of the basis for Defendant's denial of portions of Plaintiff's Claims. Defendant's denial of wind damage was based solely on its hired consultants unsupported conclusions that the damages was wear and tear but failed discuss any supporting facts why the tornadic wind could cause such severe damage to a small portion of the Property and not result in apparently any additional damage to the rest of the Property.

88.     Further, Defendant has failed to offer a reasonable explanation for its denial of the hail damage it was notified of in Claim 1.

89.     In fact,  Defendant has failed to provide any explanation as to its coverage decision of Plaintiff's Claim 1.

90.     Each of these acts and omissions, singularly or in conjunction with others, constituted a violation of Texas Insurance Code § 541.060(a)(3), which proximately caused Plaintiff's damages.

*Violation of § 541.060(a)(4)*

91.     Plaintiff reasserts and realleges the allegations set forth in paragraphs 6 through 90 of this Complaint.

92.     Defendant was notified of Plaintiff's Claim 1 in March of 2023 and has yet to provide Plaintiff any letter stating that the Claim 1 has been accepted or denied.

93.    There is no reason Defendant could not have investigated and issued a decision within 60 days of receiving notice of Plaintiff's Claim 1. Instead of investigating Claim 1 for coverage as reported, Defendant instead improperly limited its liability by informing Plaintiff that by withdrawing Claim 1, the damages would be easier to cover and resolve under Claim 2.

94.    Defendant violated § 541.060(a)(4) by failing within a reasonable time to affirm or deny coverage of a claim to Plaintiff regarding Claim 1.

   *Violation of § 541.060(a)(7):*

95.    Defendant violated § 541.060(a)(7) by refusing to pay the remainder of Plaintiff's Claim without conducting a reasonable investigation with respect to the Claim.

96.    Specifically, Defendant has refused to pay Plaintiff(s)' Claim without conducting a reasonable investigation by:

   a.    Making the misrepresentations listed at paragraph 74;

   b.    Failing to properly investigate the damage to the exterior of the Property and the cause of such;

   c.    Failing to record the obvious evidence of covered damage across the entire roof and roofing system;

   d.    Failing to properly investigate the interior damage and the cause of such;

   e.    Claiming that Claim 1 should be closed in order to properly handle Claim 2;

   f.    Claiming interior water damage to other portions of the Property could not have been caused by the covered loss event without any proof to support that claim;

   g.    Misrepresenting to Plaintiff the date of loss by wrongfully claiming prior weather events was the cause of the loss despite evidence to the contrary; and

h.  Hiring an engineer in an effort to solely deny Plaintiff's Claim, despite clear evidence of covered damage to the contrary.

97.    Each of these acts and omissions, singularly or in conjunction with others, constituted a violation of Texas Insurance Code § 541.060(a)(7), which proximately caused Plaintiff damages.

98.    Based on paragraph 74, Defendant has violated § 541.061 by making an untrue statement of material fact such as that closing Claim 1 would help resolve Claim 2.

### C.    DTPA Violations

99.    Plaintiff reasserts and realleges the allegations set forth in paragraphs 6 through 98 of this Complaint.

100.    At all material times hereto, Plaintiff was a consumer who purchased insurance products and services from Defendant.

101.    Defendant is a "person" as defined by § 17.45 of the Texas Business and Commerce Code.

102.    Defendant violated the Texas Deceptive Trade Practices Act by  accepting  insurance premiums  but  refusing  without  a reasonable basis to pay benefits due and owing, engaged in an unconscionable action or course of action as prohibited by the DTPA § 17.50(a)(1)–(3) in that this Defendant took advantage of Plaintiff's lack of knowledge, ability, experience, and capacity to a grossly unfair degree, that also resulted in a gross disparity between the consideration paid in the transaction and the value received, in violation of Chapter 541 of the Insurance Code.

103.    Specifically, Defendant improperly tried to limits its liability on Claim 1 by stating Plaintiff should close Claim 1 to help resolve Claim 2.

104.    Such recommendation was improper and not required by the Policy. Defendant instead sought to use Plaintiff's inexperience in handling insurance Claims to its benefit itself by limiting any payment for covered damage.

105.    Upon information and belief, Defendant knowingly committed the acts complained of. As such, Plaintiff is entitled to exemplary and/or treble damages and reasonable attorney's fees pursuant to the DTPA and Texas Insurance Code § 541.152(a)-(b).

**D.    Breach of The Duty of Good Faith and Fair Dealing**

106.    Plaintiff reasserts and realleges the allegations set forth in paragraphs 6 through 105 of this Complaint.

107.    Plaintiff and Defendant entered into a valid and enforceable insurance policy.

108.    Defendant owed Plaintiff the common law duty of good faith and fair dealing.

109.    Defendant breached the common law duty of good faith and fair dealing by wrongfully denying the Claim and delaying payment on the Claim when Defendant knew or should have known liability was reasonably clear.

110.    Specifically, Defendant breached its duty of good faith and fair dealing by:

    a.    Making the misrepresentations listed at paragraph 74;

    b.    Failing to properly investigate the damage to the exterior of the Property and the cause of such;

    c.    Failing to record the obvious evidence of covered damage across the entire roof and roofing system;

    d.    Failing to properly investigate the interior damage and the cause of such;

    e.    Claiming that Claim 1 should be closed in order to properly handle Claim 2;

    f.    Claiming interior water damage to other portions of the Property could not have been caused by the covered loss event without any proof to support that claim;

    g.    Misrepresenting to Plaintiff the date of loss by wrongfully claiming prior weather events was the cause of the loss despite evidence to the contrary; and

h.  Hiring an engineer in an effort to solely deny Plaintiff's Claim, despite clear evidence of covered damage to the contrary.

111.  Upon information and belief, Defendant's actions were performed without due regard or care for the Claim process and were done intentionally and/or with gross negligence.

112.  Defendant was aware at all times that its actions would result in the denial and/or underpayment of Plaintiff's Claim, cause mental anguish and thus extraordinary harm associated with Plaintiff's Claim.

113.  As a result of Defendant's acts and/or omissions, Plaintiff sustained actual damages.

## V.    Attorneys' Fees

114.  Plaintiff reasserts and realleges the allegations set forth in paragraphs 6 through 113 of this Complaint.

115.  Plaintiff engaged the undersigned attorneys to prosecute this lawsuit against Defendant and agreed to pay reasonable attorneys' fees and expenses through trial and any appeal.

116.  Plaintiff is entitled to reasonable and necessary attorney's fees pursuant to TEX. CIV. PRAC. & REM. CODE §§ 38.001-38.003 because Plaintiff is represented by an attorney, presented the claim to Defendant, and Defendant did not tender the just amount owed before the expiration of the 30th day after the claim was presented.

117.  Plaintiff further prays that it be awarded all reasonable attorneys' fees incurred in prosecuting his causes of action through trial and any appeal pursuant to Sections 541.152 and 542.060 of the Texas Insurance Code.

118.  Plaintiff further prays that it be awarded all reasonable and necessary attorney's fees incurred in prosecuting Plaintiff's DTPA causes of action above pursuant to § 17.50(d).

### VI.    CONDITIONS PRECEDENT

119.    All conditions precedent to Plaintiff's right to recover have been fully performed or have been waived by Defendant.

### VII.    DEMAND FOR JURY

120.    Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs herein request a trial by jury.

### VIII.    PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff herein prays that, upon final hearing of the case, he recover actual damages, consequential damages, and treble/exemplary damages from and against Defendant that may reasonably be established by a preponderance of the evidence, and that Plaintiff be awarded attorneys' fees through trial and appeal, costs of court, pre-judgment interest, post-judgment interest, and such other and further relief, general or special, at law or in equity, to which Plaintiff may show itself to be justly entitled.

Respectfully submitted,

*/s/Andrew D. Spadoni*
Jordan M. Torry
jtorry@dcclawfirm.com
State Bar No. 24058152
Andrew D. Spadoni
aspadoni@dcclawfirm.com
State Bar No. 24109198

DUGAS & CIRCELLI, PLLC
1701 River Run, Suite 703
Fort Worth, Texas 76107
Telephone:    (817) 945-3061
Facsimile:    (682) 219-0761

ATTORNEYS FOR PLAINTIFF

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing document has been forwarded to counsel of record in accordance with the Federal Rule of Civil Procedure, on August 8, 2024, via e-service.

***via e-service***
Karl A. Schulz
State Bar No. 24057339
kschulz@cozen.com

**COZEN O'CONNER**
1221 McKinney Street, Suite 2900
Houston, Texas 77010
Telephone:      (832) 214-3933
Facsimile:      (713) 512-5236

**ATTORNEYS FOR DEFENDANT**

*/s/Andrew D. Spadoni*
Andrew D. Spadoni