**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **RELAX INN DILLEY, LLC d/b/a RELAX INN,** | § | |
| | § | |
| ***Plaintiff,*** | § | |
| | § | **Civil Action No. 5:24-cv-800** |
| **v.** | § | |
| | § | |
| **KINSALE INSURANCE COMPANY,** | § | |
| | § | |
| ***Defendant.*** | § | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE THE TESTIMONY OF PLAINTIFF'S RETAINED EXPERT ARNULFO ESCAMILLA, JR., P.E.**

Plaintiff Relax Inn Dilley, LLC d/b/a Relax Inn ("Relax Inn") respectfully submits this Response in Opposition to Defendant Kinsale Insurance Company's Motion to Exclude the Testimony of Plaintiff's Retained Expert Arnulfo Escamilla, Jr., P.E., and shows the Court as follows:

## I. FACTUAL BACKGROUND

On March 1, 2023, a severe wind and hailstorm occurred at Plaintiff's Property located at 1062 FM 117, Dilley, Texas 78017. Dkt. 5, First Amended Complaint at ¶¶ 1, 10, 22. The storm was a significant event with hailstones over 2-inches in diameter that impacted the property for a significant time and caused severe damage. *Id*. McLarens representative Nick Alvarez visited the Property on behalf of Defendant and found covered damage, writing an estimate for $267,183.19 in RCV for the full removal and replacement of the entire roof system. *See* Ex. 1, McLaren's Hail Damage Estimate. However, Kinsale inexplicably never provided this estimate to Plaintiff and

never issued payment for damages from this Claim, as instead choosing to hire an engineering firm, Rimkus, solely to deny the Claim. Dkt. 5 at ¶¶ 15, 16, 84, 96.

On May 15, 2023, to add insult to injury, a tornado damaged the Property. Dkt. 5 ¶¶ 24, 55. The tornadic winds tore portions of the roof completely off damaging parts of the roof to the point of being nonrepairable and caused further extensive damage to the exterior and interior of the Property from the strong wind, debris and water. *Id*. at ¶¶ 25-28.

On September 12, 2023—nearly *four months* following Plaintiff initiating the tornado Claim—and months of misleading Plaintiff to believe that its damage under the March 2023 hail claim would be covered by closing it and moving forward with the May 2023 tornado Claim, Defendant issued its one and only deficient estimate in the amount of $221,579.47 ACV, which covered only a portion of the damage to the Property caused by the May 2023 tornado. Dkt. 5 at ¶¶ 59-62; *see also* Ex. 2, MKA Estimate.[1] Despite clear evidence of covered damage from both events, Defendant continues to wrongfully deny the hail claim and substantially underpay the tornado claim. Dkt. 5 at ¶¶ 62, 76, 87.

Thereafter Plaintiff was forced to file this lawsuit and, pursuant to the Court's Scheduling Order, designated Arnulfo F. Escamilla Jr., P.E. of CASA Engineering as its causation expert to testify as to the cause of loss for the damages found at the Property made the subject matter of this lawsuit. *See* Dkt. 27-2 , Pltf's. Expert Des.[2] Defendant has since filed its baseless motion to strike.

[1] Kinsale makes the absurd statement that this payment was made "pursuant to a sworn proof of loss signed by Relax Inn." Dkt. 27 at ¶ 1. Kinsale's allegations are false, failing to mention that the sworn proof of loss, at the time it was presented by a public insurance adjuster, totaled over $1,100,000.00 in covered damages due from the losses in question. Moreover, Kinsale cites to nothing in support of these baseless allegations, which the Court can easily disregard. Relax Inn's representatives sent Kinsale more than sufficient information to support the true scope of the losses in question, including photographs, explanations and estimates. Accordingly, the Court can dismiss assertions that Plaintiff "refused to provide Kinsale with documents and information supporting Relax Inn's claims."

[2] Defendant's "objection to" and apparent hangup on the clear typographical error in the Plaintiff's designation is a non-starter. *See* Dkt. 27 at ¶ 3. Typographical errors unfortunately do happen. *See* Dkt. 27 at Caption (misspelling "Testimony" as "Testimoy"). Nevertheless, Plaintiff's designation of experts comport with the requirements of F.R.C.P. 26(a)(2)(B).

## II. ESCAMILLA'S BACKGROUND, METHODOLOGY AND OPINIONS

### A. Professional Background, Education, Training, and Peer Review Process.

Mr. Escamilla's work experience, education, and specialized knowledge qualify him as an expert for determining whether damages to the Property are the result of certain storms and the extent of such damages. Mr. Escamilla began his career working for South Texas Restoration for over nine years, where he installed roofs including metal R panel systems like the one at the Relax Inn property. *See* Ex. 3, Escamilla Depo. 23:10-24:22.

During this time Mr. Escamilla gained an engineering degree at the University of Texas at San Antonio taking classes in strength of materials learning how different materials respond to various forces and environmental conditions such as impact from external sources and suction pressures. *Id*. at 20:22-24, 21:13-22:12. After receiving his degree in 2017, Mr. Escamilla became a licensed Professional Engineer in Texas in 2021. *Id*. at 20:22-21:5; 50:14-15.

Since becoming licensed, he has conducted forensic evaluations on more than 500 commercial and residential properties, with approximately 70 percent of his work involving wind and hail damage evaluation to properties. *Id*. at 31:3-32:9; Dkt. 27-1, Escamilla Report at 3. He trained under David Day, P.E., D.F.E., who is board certified as a Diplomate in Forensic Engineering and is a member of the National Academy of Forensic Engineers with over 41 years of engineering experience. *Id*. at 39:17-40:11; Dkt. 27-1 at 3. Mr. Day provided extensive mentoring to Mr. Escamilla, including specific training on evaluating hail damage, examining indentations to metals, spatter marks, collateral indicators showing recent hailstone impacts, and distinguishing between historical and recent damage. Escamilla Depo. 50:12-58:7. Mr. Day also reviewed, approved, and signed Mr. Escamilla's findings in this case. *Id*. at 39:17-40:11.

Mr. Escamilla also holds a certification from the Texas Windstorm Insurance Association, which required rigorous coursework demonstrating an understanding of wind forces and proper installation methods to exceed design parameters required by code and TDI. *Id*. at 28:16-30:10. Mr. Escamilla has served as expert in similar storm damage property evaluation roles, has been deposed at least 16 times, and has never been limited or stricken by a court. *Id*. at 8:13-9:18, 42:7-10. In fact, Mr. Escamilla has been called as an expert witness at trial and been permitted to testify concerning storm damage in courts within this Circuit. *See Jackson et. al. vs. State Farm Fire & Casualty Co.*, No. 6:21-CV-02117-DCJ-DJA (W.D. La. March. 7, 2023). Mr. Escamilla is clearly qualified to opine on the issues in this case and does not require a metallurgical degree to do so.

**B. Mr. Escamilla's Methodology.**

Mr. Escamilla's utilized a methodology that has been approved by courts numerous times throughout the 5th Circuit by initially completing onsite inspections of the Property starting on May 12, 2023. Dkt. 27-1 at 1-3. At his initial inspections he inspected not only the roof, but also the full building envelope, including AC units, walls, and interior rooms, for hail related damage. *Id*. He also examined the numerous hail indentions to the seams of the metal panels (which he determined caused leaks) and dents that permanently deformed and damaged the metal panel leading to premature failure. *Id*. at 9. Mr. Escamilla also examined "spatter marks" which "ages" hail to determine the most likely date of loss, as well as by measuring hail indentations. Escamilla Depo. 75:10-12; 56:23-25 (stating spatter indicates hail fell within two years). This allowed Mr. Escamilla to use the Koontz and Crenshaw study showing that spatter marks can range between 30 to 50 percent smaller in size than the actual hailstone that created the mark to help determine the actual size of the hail that recently fell. *See* Dkt. 27-1 at 8-9; Escamilla Depo. 28:2-6.

His inspection also revealed functional damage on most of the roof, including many fractured seams which directly affected the water shedding ability and overall lifespan of the roof. *See* . Dkt. 27-1 at 5; Escamilla Depo. 100:15-18. He also was able to gather information about the history of the Property by interviewing the building manager who reported leaks in units 110, 122, 127, 130, 101, 103, 104, 105, 106, and 107, which were reportedly not present prior to the March 2023 hail event. Dkt. 27-1 at 5.

After completing his onsite inspection he then researched over seven years' worth of weather data to discern if there was any correlation between the observed damage and the March 1, 2023 hailstorm and ruling out prior hail storms based on characteristics and timing indicators. Escamilla Depo. 69:16-70:8; 70:21-25. His weather analysis utilized multiple authoritative databases including National Oceanic and Atmospheric Administration's ("NOAA")[3] National Weather Service Storm Prediction Center ("NWSSPC") to review weather data close to the Property. Dkt. 27-1 at 6. For example, on March 1, 2023, the NWSSPC recorded hailstones up to 2 inches in diameter in the city of Dilley, Texas corresponding with hail damages. Dkt. 27-1 at 6.

Mr. Escamilla also incorporated established technical references and published studies into his analysis, including ASCE 7-16, ASTM E1038-98, studies by Johnson & Smith from the Journal of Performance of Constructed Facilities, Zhang et al. from Engineering Structures, and the Koontz and Crenshaw study titled "Hail: Sizing It Up!" and other industry materials from HAAG Engineering. Dkt. 27-1 at 4; Escamilla Depo. 27:17-20. Ultimately, Mr. Escamilla's methodology

[3] NOAA, a federal agency that is a source of historical weather and climate data, provides weather data that is publicly available and based on eyewitness events and reports. *See Storm Data FAQ Page,* NOAA, https://www.ncdc.noaa.gov/stormevents/faq.jsp. It is also used industry wide by experts and adjusters, including Defendant's own expert Mark Kubena. *See* ECF 21-3 at 2 ("The NOAA Storm Events Database for Frio County, Texas was also accessed to research severe weather events from March 1, 2023 to May 31, 2023.").

is the exact same methodology used by Defendant's own hired engineers as can be seen from their expert reports attached hereto. *See* Ex. 4, Rimkus Report.

**C. Analysis of May 15, 2023 Tornado Damage.**

Mr. Escamilla conducted his comprehensive tornado damage inspection on September 27, 2024, to evaluate and document the distinct damage patterns from the tornado event and determine the extent of damages after partial repairs had been completed. Dkt. 27-1 at 2. During this inspection, he documented that roof panels had been replaced over the east corner of the property, units 127, 130, and 131 had all interior finishes, sheetrock, and flooring removed, electrical paneling was detached, damaged soffit was observed along the east corner of the property, and debris strikes were observed on adjacent metal roof panels of the replaced section. *Id*. at 8.

Mr. Escamilla's methodology specifically examined permanent deflection of various roof panel seams sporadically throughout the roof system, noting that these seams would not have deflected without an uplifting force acting upon them, and close inspection revealed no evidence consistent with mechanical manipulation, indicating these seams were deflected under suction pressures from wind events. *Id*. at 8; 14.

The May 15, 2023 tornado event was extensively documented through multiple authoritative sources. The National Weather Service confirmed an EF-0 tornado, the NOAA Damage Viewer Application tracked the tornado showing direct path over the property reaching 75 mph gusts, CoreLogic Wind Verification Report confirmed 56 MPH winds, and the Storm Prediction Center verified tornado touchdown. *Id*. at 7.

Mr. Escamilla's analysis confirmed that the Damage Viewer application recorded the pathway of the tornadic event, confirming the presence of an EF-0 tornado with the pathway passing directly over the east corner of the structure. *Id*. at 7. The tornado's effects aligned with

damage patterns described in recent ASCE research on low-rise building wind response, particularly regarding corner pressure coefficients and progressive failure mechanisms. *Id*. at 7. His analysis followed ASCE 7-16 methodology showing that peak uplift pressures exceeded design capacity at corners, with progressive failure patterns consistent with tornado dynamics and secondary damage from wind-borne debris. *Id*. at 17. The building damage patterns aligned with recent ASCE research on tornado effects, including panel attachment failures, purlin displacement, rafter and collar tie damage, and building envelope compromise. *Id*. at 17.

Based on his original and subsequent inspections, information provided, information obtained and studied, he determined that the damage sustained from the tornadic event was limited to the east corner of the property, while confirming that hail damage from the March 1, 2023 storm had resulted in damage to all roof panels requiring complete roof replacement. *Id*. 12, 18.

**D. Mr. Escamilla's Ultimate Opinions**

Mr. Escamilla was able to reach several conclusions about the damage at the Property based on his physical inspections, extensive weather research, industry standards, and his experience and specialized knowledge, including:

- Degradation of the metal roof panels causing decreased water shedding capability, along with damage to the coating on the steel roof sheet reducing the life expectancy of the Galvalume decking;
- Fractured metal roof seams present during the May 12, 2023 inspection;
- Evidence of water intrusion into Units 110, 122, 127, 130, 101, 103, 104, 105, 106, and 107 caused by the hailstorm in question, as confirmed by the property manager and the physical evidence matching documented hail damage patterns;
- Torn off roof panels over a section of the east corner of the property following the May 15, 2023 tornado;
- Water intrusion into Units 127, 130, and 131, in which all interior finishes, sheetrock, and flooring was removed;
- Detached electrical panels on the east corner of the Property; and
- Permanent deflection of various roof panel seams sporadically throughout the roof system.

*See* Dkt. 27-1 at 5, 8, 12, 13.

## III. LEGAL STANDARD

### A. The *Daubert* Standard and Liberal Admission Policy

As the Court well knows, trial judges perform a "gatekeeping role" with respect to expert testimony by assessing whether such testimony is admissible under Federal Rule of Evidence 702. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 590–91, 597 (1993). Expert testimony is admissible if the proponent demonstrates that: (1) the expert is qualified; (2) the evidence is relevant to the case; and (3) the evidence is reliable. *Bocanegra v. Vicmar Servs., Inc.*, 320 F.3d 581, 584 (5th Cir. 2003).

As to qualifications, "Rule 702 does not mandate that an expert be highly qualified in order to testify about a given issue." *Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009). Instead, "[d]ifferences in expertise bear chiefly on the weight to be assigned to the testimony by the trier of fact, not its admissibility." *Id.*; *see also Daubert*, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."). Further, expert testimony "does not always have to be based on scientific testing; it can be based on personal experience." *Kozak v. Medtronic, Inc.*, 512 F. Supp. 2d 913, 918 (S.D. Tex. 2007); *see also TBC-JP-LR, JV v. Allied Prop. & Cas. Ins. Co.*, 2018 WL 10562785, at *4 (N.D. Tex. Sept. 28, 2018).

## IV. ARGUMENTS & AUTHORITIES

### A. Mr. Escamilla is Unquestionably Qualified to Testify.

The majority of Defendant's arguments concerning Escamilla concern his substantive findings when compared with the findings of Defendant's own experts – not his methodology. *See* Dkt. 27 at ¶¶ 10, 11, 17, 18, 19, 21. This is not the proper focus of a *Daubert* inquiry. *Daubert*, 509 U.S. at 595 (holding that the "focus" of the challenge "must be solely on principles and

methodology, not on the conclusions that they generate."). The remainder of Defendant's arguments, centered around his qualifications, reliability and relevance, clearly misstate the record in an effort to paint Mr. Escamilla as unqualified using conclusory, baseless support and assertions. Moreover, Defendant's arguments attack only the qualifications, reliability and relevance with respect to the hail damage claim, **not the tornado claim**.

**1. Mr. Escamilla Is Qualified to Render the Opinions Given Herein and Does Not Need to be a Metallurgical Engineer in Order to Give the Opinions He Does.**

Defendant's motion should be denied because Escamilla is more than qualified to testify on the subject matter before this Court based on his knowledge, skills, expertise, experience and training. As Defendant knows, differences in expertise bear chiefly on the weight to be assigned to the testimony by the trier of fact, not its admissibility. *See Daubert,* 509 U.S. at 596. The Fifth Circuit has consistently held that experts need not be highly qualified in every aspect of their testimony, and that practical experience can substitute for formal academic credentials. *Huss*, 571 F.3d at 452. Moreover, courts within this District have recognized that a witness' experience, studies and education, combined with a review of relevant materials provides a reliable basis for expert testimony. *See Perez v. City of Austin*, 2008 WL 1990670, at *10 (W.D. Tex. May 5, 2008).

As noted in Section II, and contrary to Defendant's mischaracterization, Mr. Escamilla possesses substantial relevant formal academic training that qualifies him as an expert. Mr. Escamilla has the relevant educational background, extensive experience in the construction industry, years of experience working as a professional engineer, and has received mentorship which included specific training on evaluating hail damage to metal roofing panels. Escamilla Depo at 20:20-58:7.

Defendant's assertion that Mr. Escamilla is not qualified as an expert in this matter simply because he is not a metallurgist or lacks training in metallurgy is misplaced and lacks legal support.

Critically, this argument rests entirely upon a foundation that a metallurgist must be retained to examine the damage to the metal roof at issue. This is not the case.

Defendant's statement that "further proof of surface damage is needed is" nothing more than its opinion. *See* Dkt. 27 ¶ 10. It is a factual based argument lacking legal support that goes to the expert's credibility and not methodology because the argument focuses on the factual basis upon which Escamilla formed his opinions, which is improper. *See Alpizar v. John Christner Trucking, LLC*, 2021 WL 4943691, at *3 (W.D. Tex. Oct. 22, 2021) (reiterating that an argument to exclude based on an expert's use of shaky or unknown facts is insufficient for exclusion); *see also Quiet Technology DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1345 (11th Cir. 2003) (alleged deficiencies in an expert's analysis—such as supposed shortcomings in calculations and inadequacies in studies and reports—are more properly attacked through the well-worn adversarial techniques of cross-examination, presentation of contrary evidence, and competing expert testimony) (citations omitted).

Contrary to Defendant's assertions, nowhere in his deposition or in his report did Escamilla state that a metallurgical examination is needed—he said that it could be used to confirm the damage to the coating found in specific areas. Escamilla Depo. at 113:11-24. Essentially, Defendant mischaracterizes Mr. Escamilla's statement about metallurgical examination in which he was explaining that such examination *could* provide additional confirmation, not that it was necessary for his opinions. *Id.* This is analogous to an accident reconstruction expert noting that additional testing could provide more data—it does not disqualify the expert's opinions based on available evidence.

Defendant's argument is further flawed because Defendant cherry-picks only a portion of Escamilla's findings with respect to the storms in question and ignores his findings of total system-

wide degradation following the March 1, 2023 hailstorm, which have resulted in moisture intrusion throughout the Property. *Id*. at 101:10-20. In addition to the functional damage to the coating of the metal panels and moisture intrusion (which Defendant ignores), Escamilla concluded that the storms in question created substantial damage to the Property, noted under Section II above. Essentially, Defendant's argument focuses on a very small portion of Escamilla's findings in an attempt to mislead the Court by excluding other findings and damage found by Escamilla at the Property related to both the March 1, 2023 and the May 15, 2025 storms.

As stated, under Defendant's view of this case, only metallurgists could testify about any metal components in construction, creating an impossibly narrow standard that would exclude most engineering experts from testifying about metal roofing systems – including the experts retained by both Plaintiff ***and*** Kinsale in this matter.

While making the argument that Escamilla's opinions are not reliable because Escamilla is not a metallurgist, and because metallurgy testing is needed to "confirm or unconfirm" his findings, Defendant did not retain a metallurgist to opine as to whether the damage was functional or cosmetic. *See* Dkt. 21, Def's Expert Des. This is fatal to its arguments that a metallurgist is needed. If a metallurgist is required in this case to prove or disprove the damage—most of which has already been acknowledged by Defendant in its estimate for both Claims—it must be required by both parties. *See* McLaren's Hail Damage Estimate; MKA Estimate.

In support of its argument, Defendant states, "Mr. Valle found that hail caused only dents that did not constitute functional damage." Dkt. 27 ¶ 10. There is no question that Valle was hired by Defendant "to opine if as to whether the hail impacts were cosmetic or otherwise." *See* Ex. 5, Retention Email from Nick Alvarez to Scott Hagenbucher. However, Mr. Valle is not a

metallurgist—he is a licensed civil engineer with similar qualifications very similar to Mr. Escamilla. *See* Ex. 6, Valle Resume.

In his report, Valle does lists several publications, six in total, that he relies on in forming his opinions. *See* Rimkus Report at 10. None of the articles or professional references relied on by Valle were created by a metallurgist – they were created by engineers. *Id*. Valle made his determination that the hail damage was cosmetic without relying on any metallurgical analysis, metallurgy papers or sources, or the findings of any professional metallurgist. *Id*. at 2. If Defendant believes that testing is needed than it can have its own expert testify to that – which it likely will not because it would nullify its own expert's opinions because they did not do any testing – or cross examine Mr. Escamilla in front of a jury that testing was needed (albeit with no basis). Essentially, Defendant is attempting to insert a set of rules that Relax Inn must play by, but that their own representatives do not adhere to, which is improper.

As Defendant knows, under Texas law, the insurer has the burden to prove an exclusion applies, with all doubts about an exclusion resolved in favor of the insured. *Hartford Cas. Ins. Co. v. DP Eng'g, L.L.C.*, 827 F.3d 423, 427 (5th Cir. 2016). If Defendant is correct that a metallurgist is needed to prove or disprove functional damage, then Defendant has failed to meet this burden. Ultimately, this disagreement amongst experts goes directly to the weight of Escamilla's testimony compared to that of Mr. Valle's, not its admissibility, and Courts within this Circuit have routinely rejected similar arguments to the one made by Defendant.

In *Green Acres Baptist Church, Inc. v. Brotherhood Mutual Insurance Company*, the Eastern District of Texas rejected the arguments of the carrier who sought to exclude the opinions of an engineering firm who opined that the service life of metal roofing components has been reduced by hail. *Green Acres Baptist Church, Inc. v. Bhd. Mut. Ins. Co.,* 2025 WL 77183, at *1-4

(E.D. Tex. Jan. 10, 2025). There, the carrier argued that the engineers were unqualified to opine on a decrease in years of service of the metal roofing and utilized an unreliable methodology. *Id*. The Court found that the engineers possessed extensive experience in building construction, engineering, and experience analyzing hail damage to roofing systems. *Id*. at *3. The Court dismissed analogous arguments and case law cited to by Defendant in this case, including *Amphay* and *Tri Investments,* as distinguishable in many respects. *Id*. at *4 *(citing Tri Investments v. Un. Fr. & Cas. Co*., 2019 WL 13114345, at *7 (S.D. Tex. Nov. 15, 2019) (finding proper qualifications but excluding expert testimony based on lack of methodology, supporting literature, presentations or other peer-reviewed process) and *Amphay v. Allstate Veh. & Prop. Ins. Co.*, 2023 WL 2491285, at *2 (N.D. Tex. Mar. 13, 2023) (granting summary judgment based on cosmetic damage exclusion requiring water to enter the home and the expert admitted water was not present, which are both procedurally *and* factually distinguishable from our case)).

As in *Green Acres*, Escamilla, as a licensed professional engineer in four states, possessed extensive experience in building construction, engineering, and experience analyzing hail damage to metal roofing. Plaintiff maintained numerous times in his deposition that he possesses the request skill, knowledge, education, experience and training to testify to the condition of the roof after the events in question. Escamilla Depo at 20:20-58:7. Mr. Escamilla's engineering education included strength of materials coursework, which directly addresses how different materials respond to various forces and environmental conditions. This educational background, combined with his practical experience working with metal roofing systems, provides a sufficient foundation for his opinions. *Id*.

This can be contrasted with the only analogous case in this District excluding an expert who possessed the qualifications but failed to utilize proper methodology in opining on the damage

to a metal roof. *Carter Tool Co., Inc. v. United Fire & Cas. Co.*, No. MO:18-CV-163-DC, 2019 WL 13156687, at *3 (W.D. Tex. Sept. 30, 2019). There, an insurance adjuster who was not an engineer, did not possess the requisite training, education or apply proper methodology, attempted to provide an opinion as to cause of damage to a metal roof based entirely on interpreting the findings of an independent metallurgical report. *Id*. In his deposition, the expert could not provide details about any of the scientific literature that he read or relied on in forming his opinions. *Id*. In the order excluding the expert, the Court specifically noted that the issue was not about whether one must be a metallurgist to render an expert opinion, but whether Plaintiff could point to any "independent validation" of the scientific methodology, which they could not. *Id*. at *3-4.

Unlike the appraiser in *Carter Tool*, Mr. Escamilla's methodology incorporates studies and principles from recognized authorities in the field, including publications by Haag and Koontz that are widely accepted in the industry for evaluating wind and hail damage. Escamilla Depo. 27:14-28:10. His approach of examining spatter marks, indentation patterns, and correlation with weather data follows established forensic engineering practices established by the numerous peer reviewed publications in helping formulate his opinions, which he testified to in his deposition. *Id*. at 27:14-28:10; 67:20-25; Dkt. 27-1 at 4-19.

Ultimately, this matter involves competing opinions concerning the technical evaluation of metal roofing systems, building damage and the correlation of weather data with damage patterns and ruling out alternative causes, which requires specialized knowledge of construction, materials science, and forensic engineering. Mr. Escamilla's testimony addresses highly technical matters and engineering analysis beyond lay understanding. As such, Plaintiff has demonstrated by a preponderance of the evidence that Mr. Escamilla has employed sufficient methodology and generally accepted standards for the formulations of his opinions in this matter

**B. Mr. Escamilla's Opinions are Relevant and Will Assist the Trier of Fact in Determining the Conditions of the Property Following the Storms.**

To be relevant, the expert testimony must "assist the trier of fact to understand the evidence or to determine a fact in issue." *Daubert*, 509 U.S. at 589. In a case such as this, the question for the Court is whether the testimony "would 'have added information that, if the jurors found it credible, might have been determinative' of difficult causation questions." *Huss,* 571 F.3d at 456 (5th Cir. 2009) (*citing Battle v. Mem'l Hosp. at Gulfport,* 228 F.3d 544, 553 (5th Cir.2000).

"Relevance depends on 'whether [the expert's] reasoning or methodology properly can be applied to the facts in issue.'" *Knight v. Kirby Inland Marine Inc*., 482 F.3d 347, 352 (5th Cir. 2007) (quoting *Daubert*, 509 U.S. at 592–93). The proponent need not prove to the judge that the expert's testimony is correct, but she must prove by a preponderance of the evidence that the testimony is reliable. *Moore v. Ashland Chem. Inc*., 151 F.3d 269, 276 (5th Cir. 1998) (*citing In re Paoli R.R. Yard PCB Litigation*, 35 F.3d 717 (3d Cir.1994)). Thus, the question is not whether the expert's analysis is perfect, or even correct, but whether it falls outside "the range where experts might reasonably differ." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 153 (1999).

Defendant makes a series of arguments directed at challenging Escamilla's findings under Rule 403, which all fall well short of the standard for exclusion of expert testimony. Dkt. 27 ¶¶ 13-14. As detailed in previous sections, including Section II, Escamilla performed an extensive analysis utilizing accepted methodology to determine the damage, if any, caused by the storms in question. Mr. Escamilla's testimony undoubtedly assists the trier of fact in determining whether damage was caused from the storm events and whether that damage is functional. Defendant's arguments that "additional information is needed" does not render Escamilla's opinions irrelevant, and Defendant failed to cite one single applicable case to support its assertion. *Id*.

Defendant argues that Mr. Escamilla's opinion is irrelevant because he does not know the roof's manufacturer, coating type, and installation specifications. *Id*. This argument is misplaced for several reasons. While Mr. Escamilla did not identify the specific manufacturer or coating type, his testimony shows this information is not necessary for his engineering analysis of storm damage. Escamilla Dep. 99:5-101:20. Escamilla's education, including his strength of materials training and visual inspection methodology allow him to assess damage to metal roofing systems regardless of specific manufacturer details. *Id*. The damage patterns he observed—indentations, fractured seams, compromised water-shedding capability, and water intrusion—are observable and measurable phenomena that don't require manufacturer-specific data to analyze using established engineering principles. *Id*.

Moreover, Defendant's speculative reference to potential installation or maintenance issues actually supports the need for Mr. Escamilla's expertise. When asked about code compliance, Mr. Escamilla testified that there was no abnormal building standards that were not acceptable practice at the time that structure was built. *Id*. at 84:15-17. If there were pre-existing installation defects, an expert is needed to differentiate between damage from those defects versus storm damage. Mr. Escamilla's methodology specifically includes examining installation quality and ruling out non-storm causes, which he did through his site inspections and analysis, as discussed in detail throughout this response.

In sum, expert testimony on complex engineering matters like storm damage causation, material performance, and building envelope integrity assists rather than confuses the jury. The alternative—asking laypeople to determine causation of complex storm damage involving multiple weather events, pre-existing conditions, and technical performance standards—would be far more prejudicial and confusing than expert testimony that explains these technical issues in

understandable terms. As such, Defendant has failed to meet its burden that Escamilla's testimony is not relevant.

### C. Mr. Escamilla's Opinions Are The Product of Sound Scientific Reasoning And Methodology and Defendant's Factual Critiques go to Credibility not Admissibility.

In conducting the reliability analysis, a court focuses on the reasonableness of the expert's approach regarding the matter to which his testimony is relevant and not on the conclusions generated by the expert's methodology. *Daubert*, 509 U.S. at 595; *Kumho*, 526 U.S. at 153–54.

It is only when an expert's methodology is unreliable that wholesale exclusion is proper. *See Tassin v. Sears, Roebuck and Co.*, 946 F. Supp. 1241, 1248 (M.D. La. 1996) ("If the expert's opinions are based on facts, a reasonable investigation, and traditional technical/mechanical expertise, and he provides a reasonable link between the information and procedures he uses and conclusions he reaches, then rigid compliance with *Daubert* is not necessary.").

#### 1. Mr. Escamilla Uses the Same Methodology Approved by Courts in This Circuit for Investigating and Opining on Storm Damages.

Mr. Escamilla used the same methodology that other experts have time and again used and been upheld by courts in this Circuit as reliable. Because of this fact alone, Defendant's motion should be denied.

For example, in the *Hub Texas, LLC*, the Court found Rule 26(a)(2)(B) was satisfied where an expert produced a report with facts and reasoning similar to the report at issue here in the face of a motion to strike. *See Hub Tex., LLC*, 2023 WL 2772052, at *7 (N.D. Tex. Mar. 21, 2023). The court in *Hub Texas, LLC*, found the expert's report satisfied Rule 26 because the "data and information demonstrate [the expert] in fact examined other potential causes, thereby rendering his methodology and opinions reliable, at least for purposes of determining admissibility under *Daubert* and Rule 702." *Id.* In doing so the court in *Hub* noted that the expert's

"report demonstrate[d] that he considered, and gave reasoned explanations for discounting, other potential sources of the damage to the roofs." *Id.* at 5.

In our case, and as detailed above, Mr. Escamilla reviewed numerous documents and photographs related to the issues in this case and industry articles relevant to the issues presented here. *Id*. at 4. Mr. Escamilla also physically inspected the Property himself, researched weather data, and reviewed and relied on other engineer and expert reports and findings. *Id*. at 3–4. Mr. Escamilla also interviewed the Property owner to help determine if the Property was experiencing interior water leaks prior to the March 2023 hailstorm and May 2023 tornado. *Id*. at 5. Mr. Escamilla then used not only his experience and skill, but also his engineering knowledge to determine the March 2023 hailstorm and May 2023 tornado resulted in a breach of the roof system that has compromised the roofs integrity and requires replacement. *Id*. at 18. In doing so, he specifically stated that the two "events produced separate and independently verifiable damage patterns that can be clearly differentiated through scientific analysis." *Id*.

Mr. Escamilla also rules out other potential causes of damage such as previous hail events as causing the interior water damages found at the Property. *Id*. at 5 ("[T]hese leaks were reportedly not present prior to the March 2023 hail event."). Mr. Escamilla relied on "historical imagery" and was further corroborated by the hail spatter marks found at the Property just two months after the March 2023 hailstorm which tend to only last 1 to 2 years after a storm. *Id*. at 4, 8. Additionally, Mr. Escamilla specifically went as far back as 2016 when researching historical weather data to properly rule out prior hail events as the cause of loss. Escamilla Depo. 70:1–7. Based on his weather research and the characteristics of the hail damage at the Property, Mr. Escamilla concluded there was not "any evidence to support that any damage had occurred prior to the reported date of loss," on March 1, 2023. *Id*. at 72:12–19.

The methodology used by Mr. Escamilla is sound, and has been approved by the courts in this Circuit many times over. *See Tassin,* 946 F. Supp. at 1248 ("If the expert's opinions are based on facts, a reasonable investigation, and traditional technical/mechanical expertise, and he provides a reasonable link between the information and procedures he uses and conclusions he reaches, then rigid compliance with Daubert is not necessary."); *see, e.g.*, *Hub Tex., LLC*, 2023 WL 2772052, at *5-7; *Mantzuranis v. State Farm Lloyds*, No. 3:21-CV-01486-M, 2022 WL 2916176, at *2 (N.D. Tex. May 23, 2022); *Gun Barrell Jacksonville LLC v. Depositors Ins. Co.*, No. 6:20-CV-469-JDK, 2021 WL 5154218, at *3 (E.D. Tex. Oct. 9, 2021); *see also J.A. Lanier & Associates, Inc. v. Robbins Electra Mgmt., LLC*, No. 4:21-CV-390, 2022 WL 1226966, at *4 (E.D. Tex. Apr. 26, 2022).[4]

Because Mr. Escamilla utilized a sound methodology, Defendant instead attempts to improperly strike Mr. Escamilla by alleging factual critiques that underpin his conclusions, such as by alleging he failed to consider certain information (e.g., the age of the roof, maintenance history, the rate of corrosion, previous weather data) supposedly leading to inaccurate opinions on the cause and scope of damages to the Property. *See* Dkt. 27 at ¶¶ 10, 11, 17, 18, 19, 21. However, as discussed further below, not only are Defendant's factual critiques a mischaracterization of what Mr. Escamilla's opinions, report, and testimony are, but Defendant's complaints actually go to Mr. Escamilla's credibility and are for the jury's consideration.

**2. <u>Mr. Escamilla Carefully Considered and Excluded Other Causes of Damage.</u>**

[4] Mr. Escamilla does not name this methodology, but it would fall into what the Tenth Circuit has even referred to as "reasoning to the best inference." *See Thompson v. APS of Oklahoma*, LLC, No. CIV-16-1257, 2018 WL 4608505, at *5 (W.D. Okla. Sept. 25, 2018). Under this method, an expert forms an opinion by "draw[ing] 'abductive inferences about a particular proposition or event by a process of eliminating all other possible conclusions to arrive at the most likely one, the one that best explains the available data.'" *Id.* (quoting *Bitler*, 400 F.3d at 1237, 1237 n. 5.). In eliminating alternative causes experts must provide objectionable reasons, however, "an expert need not 'categorically exclude each and every possible alternative cause' to make such testimony admissible." *See id.* (quoting *Bitler*, 400 F.3d at 1238 n. 6).

Contrary to Defendant's assertion, Mr. Escamilla researched and ruled out previous storm events back to 2016 as well as other possible causes of damage when concluding that the damages and repairs discussed in his report were solely due to the March and May 2023 hailstorm and tornado.

Defendant claims that "[b]ecause Mr. Escamilla cannot show his homework regarding past weather events, his opinions are not based on sufficient facts or data," and are therefore unreliable *ipse dixit* opinions. Dkt. 27 ¶ 15. Not only is Defendant factually incorrect, highlighting the absurdity of Defendant's motion, but Mr. Escamilla specifically walked Defendant's counsel through his process of researching and ruling out historical weather data going back over seven years from 2023 to determine and rule out what storms could have caused the damage patterns he observed at the Property. *See* Escamilla Depo. 65:24–73:18. In fact, Mr. Escamilla also testified that in researching weather events he researched multiple weather databases, including NOAA "SPC storm reports", HailTrace, and CoreLogic to help result out prior storms as causing the interior leaks and functional damage to the roof. *Id*. at 77:2–4; Dkt. 27-1 at 4.

The case that Defendant cites, *Hilltop Church of the Nazarene*, is distinguishable because it involved the complete failure to investigate historical events, not questions about the scope of documentation in expert reports. *See Hilltop Church of Nazarene v. Church Mut. Ins. Co*., 2022 WL 17823931, at *2 (E.D. Tex. Dec. 20, 2022) (noting the expert in *Hilltop* failed to research the three years from the date of loss in 2019 to the date of his inspection in 2022). Here Mr. Escamilla was out at the Property within two months following the March 1, 2023 hailstorm removing any lengthy delay between the date of loss and date of inspection. Dkt. 27-1 at 3. Further, Mr. Escamilla specifically stated that his weather research encompassed from 2016 to 2023. Thus, there is no similar "25-month gap of unexamined weather events" that gave the *Hilltop* Court grave concern

in admitting that experts' testimony. *See Hilltop* 2022 WL 17823931, at *2. Further, unlike the expert in *Hilltop*, Mr. Escamilla also explains the size of the hailstone impacts at the Property from the March 1, 2023 event, and his method to determine the age of the hail damage through spatter marks. *Id.* ("But he explained neither the size of hailstone impacts nor his method for ascertaining their age."). For example, Mr. Escamilla's report explicitly states that as a licensed professional engineer, and "utilizes standard engineering practices to determine if the information obtained from various weather databases are consistent with the conditions observed on site," which he also testified to. *See* Dkt. 27-1 at 6; Escamilla Depo. at 71:19-72:4, 73:16-18. As a result, Mr. Escamilla was able to rule out prior storms as the cause of the functional damage for various reasons.

Unquestionably, Defendant is more than aware that Escamilla did a thorough review of the damage during his multiple inspections, as well as his review of historical weather research, and that based on his experience, skill, and specialized knowledge, was able to rule out all other cause of loss besides the March 1, 2023 hailstorm as being the reason the roof must be replaced and the cause of the interior water damages. *Id.* Escamilla did a thorough reporting of the damages, testifying that he was able to find a direct correlation between weather data showing significant hail on March 1, 2023, and the large indentations he documented during his site inspections, ruling out seven other potential storms. *Id.* at 39:17–40:11, 65:24–66:4, 70:18–25.

In this case, Defendant's arguments are factual based arguments or differences in opinions that go to an expert's credibility and not methodology. As discussed thoroughly above, Mr. Escamilla used sound and accepted methodology to link the significant damage to the Property that has allowed water to enter the roof and compromise the integrity of the system to the March and May 2023 hailstorm and tornado.

**V. CONCLUSION AND PRAYER**

Defendant's motion fails to meet the heavy burden required to exclude expert testimony under *Daubert* and Rule 702. Mr. Escamilla is amply qualified by education, training, and extensive experience to render opinions about wind and hail damage to Property. His opinions are based on reliable methodologies that have been repeatedly approved by courts in this Circuit, and they are founded on sufficient facts obtained through proper investigation. The Court should exercise its discretion to admit Mr. Escamilla's testimony and allow the jury to evaluate his opinions in the context of all evidence presented at trial, including any competing expert testimony Defendant may present.

**WHEREFORE**, Plaintiff respectfully requests that this Court deny Defendant's Motion to Exclude the Testimony of Plaintiff's Retained Expert Arnulfo Escamilla, Jr., P.E., in its entirety, and grant such other relief as the Court deems just and proper.

Respectfully submitted,

*/s/ J. Trent Cooper*

Andrew D. Spadoni
State Bar No. 24109198
aspadoni@dcclawfirm.com
Jordan M. Torry
State Bar No. 24058152
jtorry@dcclawfirm.com
J. Trent Cooper
State Bar No. 24120108
tcooper@dcclawfirm.com

**DUGAS & CIRCELLI, PLLC**
4800 Bryant Irvin Ct.
Fort Worth, Texas 76107
Telephone: (817) 817-7000
Facsimile: (682) 219-0761

**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been forwarded to counsel of record in accordance with the Federal Rule of Civil Procedure, on July 1, 2025, via e-service.

***via e-service***
Karl A. Schulz
kschulz@cozen.com

**COZEN O'CONNER**
1221 McKinney Street, Suite 2900
Houston, Texas 77010
Telephone: (832) 214-3933
Facsimile: (713) 512-5236

**ATTORNEYS FOR DEFENDANT**

***/s/J. Trent Cooper***
J. Trent Cooper